IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK V. SHEETS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4534-N |
| | § | |
| WELLS FARGO BANK, N.A., *et al.*, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendants Wells Fargo Bank, N.A.'s ("Wells Fargo Bank") and Wells Fargo Home Mortgage, Inc. ("WFHM" and, collectively with Wells Fargo Bank, "Wells Fargo") motion to dismiss [Doc. 14] and Defendants Barrett Daffin Frappier Turner & Engel ("Barrett") and Stephen C. Porter's motion to dismiss [17].[1] The Court grants Wells Fargo's motion in part and denies it in part, and the Court grants Barrett and Porter's motion in its entirety.[2]

---

[1]Wells Fargo advised the Court that Sheets has filed for bankruptcy protection. The Court concludes that the automatic stay applicable to cases against bankruptcy debtors does not apply to this case. *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) ("[D]istrict courts retain jurisdiction to determine the applicability of the stay to litigation pending before them, and to enter orders not inconsistent with the terms of the stay."). 11 U.S.C. § 362 stays actions *against* debtors but is silent as to actions *by* debtors. *See In re U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) (noting that "a debtor's offensive claims are not subject to the automatic stay").

[2]Wells Fargo has also moved to strike Sheets's response brief as untimely [27]; conversely, Sheets has moved the Court to accept his late filing [29]. Under Federal Rule of Civil Procedure 6(b), "the district court is granted broad discretion to expand filing deadlines." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). In its

# I. THE PARTIES' DISAGREEMENT ABOUT SHEETS'S MORTGAGE[3]

This case is about the mortgage on Plaintiff Mark Sheets's home (the "Property"). Sheets obtained a mortgage on the Property in April 2003. At that time, he executed a note payable to WFHM (the "Note") and a deed of trust (the "Deed") encumbering the Property and securing payment of the Note. The Federal Home Loan Mortgage Company apparently purchased the mortgage later in 2003, but Wells Fargo remains the loan servicer.

Sheets made several Qualified Written Requests ("QWR") to Wells Fargo regarding the status of his loan under the Real Estate Settlement Procedures Act ("RESPA"). Wells Fargo allegedly responded to none of them. Sheets later tried to modify the loan, but Wells Fargo allegedly misled Sheets by telling him the loan could not be modified because it was a Texas Equity Loan, even though the loan documents themselves expressly state otherwise.

In July 2012, Wells Fargo accelerated the maturity of the Note and notified Sheets that the trustee would sell the Property. A Wells Fargo employee apparently then told Sheets that, contrary to Wells Fargo's earlier statement, his loan was eligible for modification but that modification would not toll the foreclosure process. Sheets also claims that Wells Fargo worked to stall the modification process while accelerating the Note and seeking to sell the Property.

---

discretion, the Court denies Wells Fargo's motion to strike and grants Sheets's motion to accept his late filing.

[3]Unless otherwise noted, the Court takes the facts in this section from Sheets's first amended complaint and emphasizes that at this stage of the litigation they are just allegations.

Sheets then filed this action in state court. In his amended petition, he asserts nine causes of action: civil conspiracy, wrongful foreclosure, slander of title, slander of credit, violations of RESPA, dual tracking, violations of the Texas Finance Code, fraud, and intentional infliction of emotional distress ("IIED"). Wells Fargo removed the case to this Court and now moves to dismiss.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT DISMISSES SOME OF SHEETS'S
### CLAIMS AGAINST WELLS FARGO

#### A. Sheets's Claims Are Not Preempted

As a preliminary matter, Wells Fargo argues that the National Bank Act ("NBA") and related regulations preempt Sheets's claims. The Court disagrees. The Supreme Court has written that the NBA preempts a state law only where the NBA and the state law are in "irreconcilable conflict." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996). Specifically, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). "States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Id.* at 12. The Office of the Comptroller of the Currency ("OCC") supervises and regulates federally chartered banks pursuant to the NBA. *See* 12 U.S.C. § 93a; *Wells Fargo Bank of Tex. NA v. James*, 321 F.3d 488, 490 (5th Cir. 2003). OCC regulations have the same preemptive effect as the NBA. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

Wells Fargo contends that an OCC regulation preempts all of Sheets's claims. The regulation in question contains the following provisions:

> A national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning:
> . . .
> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or

>  term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
>  . . .
>
>  (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
>  . . . .

12 C.F.R. § 34.4(a).  According to Wells Fargo, this regulation preempts Sheets's claims because those claims directly conflict with the activities listed in section 34.4(a).  But Wells Fargo has failed to mention next subsection of this regulation, which provides as follows:

>  State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent consistent with *Barnett Bank* . . . :
>  (1) Contracts;
>  (2) Torts;
>  . . .
>  (5) Rights to collect debts;
>  (6) Acquisition and transfer of real property;
>  . . . .

12 C.F.R. 34.4(b).  This subsection saves Sheets's state causes of action from preemption because the claims are based on torts, debt collection laws, and laws about the acquisition and transfer of real property.

Moreover, under *Watters*, the laws providing for Sheets's claims are "laws of general application" that do not conflict with the NBA's "letter or general purposes." *See Watters*, 550 U.S. at 11.  The vast majority of courts to address preemption questions along these lines have come to similar conclusions.  *E.g.*, *McDonald v. Deutsche Bank Nat'l Trust Co.*, 3:11-CV-2691-B, 2012 WL 2122168, at *6 n.3 (N.D. Tex. June 11, 2012); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 554–55 (N.D. Cal. 2012); *Baldanzi v. WFC Holdings*

*Corp.*, No. 07-CIV-9551 (LTS) (GWG), 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("[C]auses of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted [by the NBA].") (citing cases). *But see Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 858 & n.7 (D. Minn. 2012) (finding state mortgage law preempted because where law was applicable to entities "acting as a residential originator or servicer" and was thus not law of general application). The Court agrees with the majority position. The state laws Sheets invokes affect all entities in Texas, not just Wells Fargo and other mortgage lenders. Moreover, the state laws and the NBA do not conflict: it is possible to conform both to the letter and purposes of the NBA and to the state laws in question. In other words, Wells Fargo can at the same time provide a loan to a consumer, collect on that loan, and refrain from committing the wrongs that Sheets asserts it committed. The NBA does not preempt these laws. The Court accordingly declines to dismiss Sheets's claims on this ground.

### B. Civil Conspiracy

To state a claim for civil conspiracy, a plaintiff must plead five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Sheets has not pled any facts supporting a claim that Wells Fargo and another party had a meeting of the minds or an object to be

accomplished.[4]  In fact, as discussed further below, the complaint is virtually devoid of facts involving any party other than Wells Fargo.  Sheets, therefore, has not pled a plausible civil conspiracy claim, and the Court dismisses it.

### C. *Wrongful Foreclosure*

Under Texas law, a plaintiff must plead three elements to assert a wrongful foreclosure claim: (1) a defect in the foreclosure proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.).  A plaintiff may recover on a wrongful foreclosure claim only if the plaintiff has lost possession of his or her property.  *See, e.g.*, *Marquez v. Fed. Nat'l Mortg. Ass'n*, No. 3:10-CV-02040-L, 2011 WL 3714623, at *6 (N.D. Tex. Aug. 23, 2011) ("[T]here can be no recovery for wrongful foreclosure if the mortgagor does not lose possession of the home." (citing *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App. – San Antonio 1998, no pet.))); *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *4 (N.D. Tex. June 24, 2009) ("Because recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure.").  Sheets has not alleged that he has lost possession of the Property, so he has not stated a claim for wrongful foreclosure.

---

[4]The Court can consider only facts pled in the complaint and therefore ignores facts newly asserted in Sheets's response to Wells Fargo's motion.

## D. Slander of Title

A plaintiff must allege six elements to state a slander of title claim: (1) the uttering and publishing of disparaging words, (2) that they were false, (3) that they were malicious, (4) that special damages were sustained thereby, (5) that the plaintiff possessed an estate or interest in the property disparaged, and (6) the loss of a specific sale. *See Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App. – Houston [14th Dist.] 1988, no writ). Sheets alleges that Wells Fargo's publication of "various documents," including its notice of a trustee's sale, constituted slander of title. But he has failed to allege any facts suggesting that the publication was malicious, he has not asserted that he suffered any special damages, and he has pled no facts suggesting that he lost a specific sale. The complaint therefore insufficiently alleges this claim, and the Court dismisses it.

## E. Slander of Credit

Sheets alleges that Wells Fargo's actions have damage his credit rating. The Fair Credit Reporting Act ("FCRA"), however, preempts his claim. The FCRA preempts state actions "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency." 15 U.S.C. § 1681h(e). To avoid FCRA preemption, a plaintiff must demonstrate that the defendant furnished the false information in question "with malice or willful intent to injure." *Id.*; *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471–72 (5th Cir. 2006). To plead malice, a compliant must include facts suggesting that "the defendant when he published the

words – (1) either knew they were false, or (2) published them in reckless disregard of whether they were true or not." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 375 (5th Cir. 2001). There are no such facts in Sheets's complaint. Sheets, therefore, has not pled malice, so the FCRA preempts his slander of credit claim.

### F.  RESPA Violations

Sheets asserts that Wells Fargo violated RESPA by failing to respond to his QWRs. Under RESPA, a loan servicer, upon receipt of a QWR, must provide a written response to the borrower acknowledging receipt within sixty days, unless the action requested is taken within that period. 12 U.S.C. § 2605(e)(1)(A). The statute also provides the requirements for a QWR. Wells Fargo's primary argument is that Sheets has not sufficiently alleged a RESPA claim because he has not alleged facts demonstrating that his letter to Wells Fargo met the statutory requirements for a QWR. The Court, though, believes the complaint is sufficient in this regard. By alleging that he sent a QWR to Wells Fargo but that Wells Fargo did not respond and that Sheets was damaged by that failure, Sheets has alleged a plausible RESPA claim under *Twombly* and *Iqbal*.[5] The Court accordingly declines to dismiss it.[6]

---

[5] Wells Fargo will have the opportunity to prove that the letter was not a QWR in a motion for summary judgment.

[6] To the extent Sheets is asserting that Wells Fargo violated RESPA in any other way, he has not asserted enough facts to give rise to a plausible claim. The Court therefore dismisses any such claims.

ORDER – PAGE 10

### G. Dual Tracking

Sheets alleges that Wells Fargo violated a February 2012 settlement agreement between the federal government, the State of Texas, and Wells Fargo under which Wells Fargo agreed to stop "dual tracking," or evaluating loan modification requests while simultaneously carrying out foreclosure proceedings. Sheets, however, has not identified the alleged settlement agreement. Moreover, he has not pled facts, or even conclusions, suggesting that he was a party to that agreement or that he is otherwise entitled to enforce it. The alleged agreement aside, Sheets has not indicated that dual tracking is in fact contrary to any law. Moreover, the Deed provides that "[a]ny forbearance by [Wells Fargo] in exercising any right or remedy . . . shall not be a waiver or or preclude the exercise of any right or remedy." Def.'s App. Supp. Mot. Dismiss [15-1], at 9. The Court concludes, then, that Sheets has not stated a valid claim for relief based on Wells Fargo's alleged dual tracking.

### H. TDCA Violations

Sheets has effectively abandoned his TDCA violations, having not responded to Wells Fargo's arguments. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (where plaintiff failed to defend claim following motion to dismiss, "[h]er failure to pursue this claim beyond her complaint constituted abandonment"). The Court therefore dismisses this claim but, as with the other claims, grants him leave to amend.

### *I. Fraud*

There are four elements to a fraud claim: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In the Fifth Circuit, a plaintiff satisfies Rule 9(b) by pleading "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179.

Sheets has not stated his fraud claim with particularity. He has not identified any particular fraudulent statements, let alone indicated the statements' speakers or the time and place the statements were made. Moreover, Sheets has pled insufficient facts to make his fraud claim plausible. In fact, the complaint lacks facts tending to support any element of this cause of action. The Court therefore dismisses this claim.

### *J.  IIED*

To state this claim sufficiently, Sheets must allege that (1) Wells Fargo acted intentionally or recklessly, (2) its conduct was extreme and outrageous, (3) its actions caused Sheets emotional distress, and (4) the emotional distress was severe.  *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).  The complaint contains no facts suggesting that Wells Fargo's conduct was extreme or outrageous or that Sheets suffered emotional distress.  The Court therefore dismisses this claim.

### *K.  Conclusion as to Claims Against Wells Fargo*

The Court dismisses Sheets's claims of civil conspiracy, wrongful foreclosure, slander of title, slander of credit, dual tracking, TDCA violations, fraud, and IIED.  The Court declines to dismiss the claim for violations of RESPA.

### IV.  THE COURT DISMISSES SHEETS'S CLAIMS AGAINST BARRETT AND PORTER

Aside from identifying Barrett as a limited liability partnership and Porter as an individual and officer of Wells Fargo, Sheets's complaint is silent as to these two defendants.  "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading."  *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008).  That is the case here.  The Court cannot determine from the complaint what Barrett's or Porter's roles in the dispute are or which of Sheets's causes of action he asserts against them.  Without more facts as to these defendants, Sheets cannot assert plausible claims against them.  The Court therefore dismisses these claims.

## CONCLUSION

The Court dismisses all of Sheets's claims against Wells Fargo except his claim alleging a RESPA violation. The Court dismisses all of Sheets's claims against Barrett and Porter. The Court grants Sheets leave to file an amended complaint within twenty-one (21) days of the date of this order.

Signed September 11, 2013.

_____
David C. Godbey
United States District Judge